Manuel Gonzalez GONZALEZ,
Plaintiff-Appellee,

v.

LA CONCORDE COMPAGNIE D'ASSUR-
ANCES, Defendant-Appellant,

v.

FAIRFAX UNDERWRITERS SERVICES,
INC., Coker Aviation Insurance, a Divi-
sion of Cook, Treadwell & Harry, Inc.,
and Peter J. McBreen & Associates, Inc.,
Defendants-Appellees.

No. 78–1378.

United States Court of Appeals,
First Circuit.

Argued April 3, 1979.

Decided July 27, 1979.

Raymond W. Belair, New York City, with whom Miranda, Cardenas, Otero, De Corral & Rodriguez, Old San Juan, P. R., and Kroll, Edelman, Elser & Wilson, New York City, were on brief, for defendant-appellant.

Harvey B. Nachman, Santurce, P. R., for plaintiff-appellee.

Before COFFIN, Chief Judge, CAMP-BELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

This is an appeal by defendant-appellant, La Concorde Compagnie D'Assurances, from a directed verdict in a jury case in favor of plaintiff-appellee, Manuel Gonzalez Gonzalez, on both liability and damages which was made and granted after plaintiff had rested, but before defendant had had an opportunity to present any evidence.

This was a breach of contract action for failure to pay insurance after the theft of plaintiff's airplane. Plaintiff had purchased a Cessna 310 aircraft from one Vires ("Byers" in the Appendix) for which he obtained insurance covering damage and loss due to theft. While the facts as to obtaining the insurance coverage are some-

what bizarre,[1] the parties agreed by pretrial stipulation that there was insurance coverage at the time the plane disappeared, presumably stolen. After the refusal to pay by La Concorde, plaintiff brought suit against it and against every other company that had anything to do with the insurance. The policy was issued by La Concorde, a French company, through its sole American agent, Fairfax Underwriters, Inc., of St. Louis, Missouri. Since the seller of the plane, Vires, was from Tennessee, the insurance was obtained through a Tennessee broker, Coker Aviation Insurance. Peter J. McBreen and Associates, Inc., an Illinois corporation, are aviation insurance loss adjusters and investigated the plane's disappearance. The bases for the claims against the different defendants were ingenious, but need not concern us.[2]

Prior to the pretrial order, summary judgment was granted in favor of Coker Aviation Insurance. The pretrial order stated:

> The plaintiff's theory is that he had a valid binder of full insurance on his aircraft and that said loss was due and payable when his plane disappeared.

> The defendant's theory is that the plaintiff is not entitled to collect for one of two reasons:

> A) That the policy was voided by a material misrepresentation in that plaintiff denied the existence of an encumbrance and that defendants contend that there was an encumbrance;

> B) If the policy was not voided, it was then subject to the exclusion of the encumbrance.

The insurance policy contained the following provision:

> "This certificate does not apply under Part 2, while the Named Insured is not the sole and unconditional owner thereof unless the certificate shall have been endorsed to specifically acknowledge the interest of a person or organization other than the Named Insured of such aircraft."

A jury was drawn, and plaintiff presented evidence consisting of testimony by himself and John Zorniak, an expert witness, who testified as to the market value of the plane. Exhibits were also introduced by plaintiff. After plaintiff had rested, defense counsel started to make a motion on behalf of all of the defendants. Before he could complete stating the motion, he was interrupted by plaintiff's counsel who moved that the jury be excused so he could make his own motion. After the jury was excused, plaintiff's counsel moved for a directed verdict against all the defendants and proceeded to argue it. Defense counsel, in his opposing argument, stated that Vires, the person from whom plaintiff had bought the airplane, was going to testify that he did not relinquish ownership in the plane and had retained title documents to it because there was a balance of $3,000 due him. Defense counsel's cross-examination of the plaintiff had brought out that plaintiff may not have paid the full sales price for the plane to Vires.[3]

---

1. No insurance contract or binder was ever received by plaintiff. A prior policy covering the same plane obtained by Coker Aviation Insurance and issued by Lloyds of London was cancelled for failure to pay the premium, which plaintiff claims was a mistake on the part of the broker.

2. We note that, while the complaint carefully states that each of these corporations has its principal place of business outside of Puerto Rico, there is no allegation as to any of them that they are authorized to do business in the Commonwealth. The complaint does state as to Fairfax and Coker that they are not authorized to do business in Puerto Rico. The pretrial order states: "Jurisdiction is based on 28 U.S.C. § 1332 and is not disputed." We cannot help but wonder if jurisdiction was as clear as the parties and the court assumed.

3. The exhibits, the interrogatories, and the cross-examination show the following. Gonzalez had paid the vendor $29,500 for the aircraft and had, in return, received a Bill of Sale for the stated consideration of $1.00. The vendor withheld, per agreement, two prior original Bills of Sale, and a release of lien, papers apparently necessary for final F.A.A. registration and which would considerably facilitate the resale of the aircraft. These papers were purportedly withheld until such time as plaintiff paid Vires an additional $3,000, which had not

At the conclusion of argument on plaintiff's motion for a directed verdict, the court granted motions to dismiss as to Fairfax and McBreen. It then directed a verdict for plaintiff against La Concorde. Defense counsel stated that he was prepared "to produce cases that an unpaid balance on an aircraft will void sole ownership, sole unconditional ownership, condition to a policy that contains that statement," and asked the court to reconsider. The court immediately denied this request. It then directed the jury to "enter a verdict in favor of the plaintiff in the amount of $39,750," which was done. The court also awarded interest and attorney's fees to plaintiff under Puerto Rican law for defendant's obstinacy in defending the suit.

It is obvious from the pretrial order, the sole ownership exclusion in the policy, the testimony, and defendant's offer of proof as to Vires' purported testimony that, tenuous and slim though it may have been, appellant did have a legitimate defense.

■ It is also clear that neither in the rules nor in the case law is there any basis for rendering a directed verdict against a defendant before he has had a chance to present evidence.[4] Rule 50(a) of the Federal Rules of Civil Procedure states:

> *Motion for Directed Verdict: When Made; Effect.* A party who moves for a directed verdict *at the close of the evidence offered by an opponent* may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made (emphasis added).

This rule is not peculiar to federal procedure, but expresses the general law that, after a party has rested, the case may be decided against it on the basis of the evidence the party itself introduced. It does not suggest that a verdict may be directed in favor of the party producing the evidence. Quite the contrary, it protects the moving party's right to continue with the trial and offer evidence.

In his brief appellee cites two cases for upholding the district court, neither of which even remotely suggests that a court can or should direct a verdict in favor of one party before the opponent has had an opportunity to introduce evidence. In *Brady v. Southern Railway Co.,* 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239 (1943), the jury had returned a verdict in favor of plaintiff, which was reversed by the State Supreme Court on the ground of lack of evidence to support the verdict, and the reversal was affirmed by the Supreme Court. The language quoted on page 9 of appellee's brief concerns the granting of a nonsuit or ordering a directed verdict after *all* of the evidence has been presented. In the second case cited by appellee, *Service Auto Supply Co. of Puerto Rico v. Harte & Co., Inc.,* 533 F.2d 23, 25 (1st Cir. 1976), we pointed out that at the close of *all* of the evidence, a directed verdict in favor of the party having the burden of proof is very rare, and advised caution by the court in granting such a motion. The question of whether a directed verdict for a plaintiff should ever be granted has stimulated discussion and controversy by the courts and scholars. *See* 9 Wright & Miller, Fed.Prac. & Proc.: Civil § 2535 (1971); Directing the Verdict in Favor of the Party With the Burden of Proof, 50 N. Carolina L.Rev. 843 (1972); Directed Verdicts, 55 Minn.L.Rev. 903 (1971).

■ Appellee's counsel suggested at oral argument that the order for a directed verdict should be viewed as one granting summary judgment for plaintiff. No such motion was ever made or mentioned in the court below, and, even if we assume that it was, the fact is that only the plaintiff was given an opportunity to present evidence.

---

been paid at the time the aircraft was reported stolen.

**4.** A directed verdict might be proper at the close of plaintiff's case if defendant rests without putting in evidence or if defendant's tendered evidence is rejected as legally inadmissa-

ble, or the like, but in all such cases defendant would have been give the opportunity to go forward and either chose not to, or was unable to come up with legally admissable and relevant evidence.

Defendant had no opportunity by way of affidavit or otherwise to set forth any facts. Appellee's counsel forgot, as he obviously did at the trial, that our adversary system requires that both sides be given an opportunity to be heard. It is not the label that is important, but the principle which is central to our whole system of jurisprudence.

While this case may ultimately prove to be, as the court below prematurely declared, "the clearest case I have every heard in my life," we must remand.[5]

*Reversed and remanded for further proceedings.*

---

**5.** It would be premature for us to decide as appellant's counsel urges, whether Missouri or Puerto Rico law applies to the insurance contract.